## A08A0361. ANDERSON v. SEARS ROEBUCK & COMPANY.
### (664 SE2d 911)

BERNES, Judge.

Wanda Anderson appeals from the trial court's grant of summary judgment in her action against Sears Roebuck & Company for breach of contract, breach of warranty, and negligent failure to repair her riding lawnmower. Anderson asserts that the grant of summary judgment was error because questions of fact remain concerning Sears's duty to repair the lawnmower, its failure to do so, and whether that failure was the proximate cause of Anderson's injuries.[1] The record contains evidence to support each of the elements of Anderson's claim, and Sears has not made out any defense as a matter of law. We therefore reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. Id.

---

[1] Anderson does not challenge the trial court's grant of summary judgment as to her breach of warranty claim.

Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact. *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990).

So viewed, the record shows that in August 2001, Anderson purchased a Craftsman riding lawnmower from Sears as well as a three-year service and repair contract. In early 2004, Anderson noticed that the lawnmower sometimes delayed shifting between gears. When the lawnmower was out of gear, Anderson would rock back and forward on the operator's seat to engage it, which often activated the automatic shut-off mechanism and caused the lawnmower to backfire. The lawnmower also backfired when Anderson drove over tree roots in her yard. She spoke to her son about these problems, but he told her that he would not attempt a repair because it might void the service contract. One of the repairmen knew that other customers had complained about the lawnmower's gear-shifting and backfiring problems. He responded to Anderson's complaints by spraying lubricant on the gear-shifting mechanism, or "transaxle," but the problem continued. Both Sears repairmen told Anderson that they could find nothing wrong.

Starting at around noon on May 21, 2004, Anderson operated the mower more or less continuously for five hours while wearing thong sandals on her feet. Throughout that time, as the lawnmower sometimes failed to shift gears and backfired, Anderson rested her left foot on the brake-clutch pedal located on the left side of the lawnmower. Though Anderson had reduced sensation in both feet as a result of longstanding diabetes, she felt a tingling sensation on her left foot as she continued to mow. Later that afternoon, she noticed that the tops of her left big toe and the two toes next to it were brown and blistered. Her right foot was also blistered, though less severely. By the next morning, the blisters on Anderson's left toes had burst and the skin had sloughed off.

Soon afterward, Anderson again contacted Sears and told them that the lawnmower would not change gears and that it was blowing hot air on her foot. On July 7, Sears repairmen replaced the transaxle and other parts on the lawnmower. After this repair, the lawnmower shifted properly and the backfiring stopped. Some time afterward, Anderson's son discovered that the muffler's metal seams had separated. Later inspections confirmed that the failure of the muffler, as caused or exacerbated by the backfiring, had resulted in an increased flow of hot air into the area above the left pedal. Flame marks leading from the exhaust system to that area were also detected.

Anderson later developed gangrene in her left big toe, which was amputated, and suffered complications leading to the amputation of a larger portion of her foot and then of her left leg to just below the knee.

1. In order to make out a claim for Sears's failure to repair the lawnmower, Anderson must show that Sears owed her

> (1) (a) legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between [Sears's] conduct and the resulting injury; and (4) some loss or damage flowing to [Anderson's] legally protected interest as a result of the alleged breach of the legal duty.

*Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). As our Supreme Court recently repeated, matters such as "the negligence of the defendant and the plaintiff, [as well as] the plaintiff's lack of ordinary care for personal safety[,] are generally not susceptible of summary adjudication," meaning that "summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Dickerson v. Guest Svcs. Co. of Virginia*, 282 Ga. 771, 771-772 (653 SE2d 699) (2007).

(a) Under longstanding Georgia law,

> [i]f a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. And in such a case, the liability arises out of a breach of duty incident to, and created by, the contract; but it is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty.

(Citation and punctuation omitted.) *City & Suburban R. v. Brauss*, 70 Ga. 368, 377 (1883). Although a breach of contract does not always give rise to an action for negligence, such an action will lie "if in addition to violating a contract obligation [the breach] also violates a duty owed to plaintiff independent of contract to avoid harming him." *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973). See also OCGA § 51-1-8.

Construed in favor of Anderson, the record shows that she had a service contract on the lawnmower and that Sears repairmen made several visits and repairs to her lawnmower without charge under that service contract. This evidence was sufficient to raise a question of fact as to whether Sears had a duty to repair the lawnmower it sold to Anderson. See, e.g., *Brock v. Allen*, 256 Ga. App. 397, 400-401 (3) (568 SE2d 536) (2002).

(b) Questions of fact also remain concerning Sears's breach of its duty to repair the lawnmower and that breach as the proximate cause of Anderson's injuries.

> Except in cases where the evidence is plain, palpable and undisputed, issues of negligence, contributory negligence, comparative negligence, proximate cause, assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence and comparative negligence are questions for the jury and are not susceptible of summary adjudication.

(Citations omitted.) *Wade v. Polytech Indus.*, 202 Ga. App. 18, 22 (3) (413 SE2d 468) (1991).

> With reference to foreseeability of injury, the correct rule is that in order for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that *some injury would result* from his act or omission, and that *consequences of a generally injurious nature might result*.

(Citations and punctuation omitted; emphasis supplied.) *Wallace v. Sears, Roebuck & Co.*, 196 Ga. App. 221, 222-223 (396 SE2d 41) (1990). See also *Williams v. Grier*, 196 Ga. 327, 337-338 (2) (26 SE2d 698) (1943).

There is evidence before us that Sears had notice that the lawnmower was failing to shift gears properly and was backfiring excessively. Under these circumstances, a question of fact remains concerning whether Sears's failure to repair the transaxle was negligent and whether that failure — exacerbated by Anderson's frequent activation of the automatic shut-off mechanism, and leading to backfires and the eventual discharge of flame and hot air in the area of the left pedal — was the proximate cause of her injuries. See *Wade*, 202 Ga. App. at 23 (3) (reversing grant of directed verdict to defendant plane owner when pilot of plane might have anticipated mechanical malfunction caused by co-pilot's breakage of carburetor heat assembly).

It is true that evidence of subsequent remedial action is inadmissible to prove a breach of duty. See *Dept. of Transp. v. Cannady*, 270 Ga. 427, 428-429 (1) (511 SE2d 173) (1999). However, such evidence is admissible for limited purposes including a showing of "contemporary knowledge of the defect, causation, [or] a rebuttal of a contention that it was impossible for the accident to happen in the

manner claimed." *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 78 (4) (460 SE2d 532) (1995). See also *Ga. Cotton Oil Co. v. Jackson*, 112 Ga. 620, 623 (4) (37 SE 873) (1901) (testimony concerning subsequent injuries inflicted by machinery was admissible for the limited purpose of showing the condition of the machine at the time the plaintiff was injured); *Medi-Clean Svcs. v. Hill*, 144 Ga. App. 389, 393-394 (5) (241 SE2d 290) (1977) (evidence that linen-folding machine guard was taken off before injury and replaced afterward was admissible to show whether laundry took reasonable steps to protect visitors from injury when the guard was missing).

Here, the subsequent repair of the transaxle eliminated both the shifting problem and the backfiring, and could be taken to show that Sears's failure to repair the transaxle caused the backfiring as well as increased air temperature and flareouts in the area of Anderson's foot. See *Ga. Cotton Oil Co.*, 112 Ga. at 623 (4); *Gillis v. Orkin Extermination Co.*, 172 Ga. App. 507, 508-509 (323 SE2d 695) (1984) (reversing grant of summary judgment where record contained some evidence of defendant's negligent omission).

2. We also reject Sears's contentions that Anderson's own acts or omissions were the proximate cause of her injuries as a matter of law.

> [I]f the character of the intervening act claimed to break the connection between [an] original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated . . . by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

(Citation and punctuation omitted.) *Williams*, 196 Ga. at 337 (2). A plaintiff is barred from recovery as a result of assuming a risk only "in clear and palpable cases, where it appears that [the plaintiff] recklessly test[ed] an observed and clearly obvious peril, or voluntarily assume[d] a position of imminent danger." *Greenforest Baptist Church v. Shropshire*, 221 Ga. App. 465, 467 (471 SE2d 547) (1996).

Even if Anderson herself had a role in causing some of the backfires by rocking back and forth on the lawnmower, or in exacerbating her injuries by wearing inappropriate footwear, we cannot say as a matter of law that these acts amounted to the *sole* proximate cause of her injuries. The causal chain in this case includes the transaxle failure, Sears's failure to repair it despite its knowledge of the problem, the activation of the automatic shut-off, the backfiring, the muffler failure, and the discharge of hot air or flame over the left pedal. And the fact that Anderson felt some tingling in her left foot at some point during those five hours cannot

be taken to relieve Sears of liability as a matter of law because we cannot know whether substantial injury had already occurred by the time Anderson first felt the tingling.

"[I]n every case, whether in suits for personal injuries or injury to property, it will be for the jury to determine whether the plaintiff as a prudent man ought to have taken steps to avoid the damage." *Mansfield v. Richardson*, 118 Ga. 250, 252 (45 SE 269) (1903). Because questions of fact remain concerning Sears's duty to repair Anderson's lawnmower as well as its breach of that duty as the proximate cause of her injuries, and because the question of Anderson's own negligence was also for the jury, we conclude that the trial court erred when it granted summary judgment to Sears. See *Williams*, 196 Ga. at 337 (plaintiff who may have been driving too fast could nonetheless maintain action against truck company and driver when driver had parked his truck illegally); *Camden Oil Co. v. Jackson*, 270 Ga. App. 837, 843-844 (2) (609 SE2d 356) (2004) (gas station customer did not assume risk of gasoline burns where there was no evidence to show that he was aware of the dangers involved in filling a portable container with gasoline).

*Judgment reversed. Ruffin, P. J., concurs. Andrews, J., concurs in judgment only.*

DECIDED JULY 9, 2008.

*Adam Ferrell*, for appellant.
*Hawkins & Parnell, Alan F. Herman*, for appellee.