A09A0933. THOMAS v. METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY et al.

(684 SE2d 83)

DOYLE, Judge.

This appeal arises from a personal injury suit filed by Shelanda Thomas against Metropolitan Atlanta Rapid Transit Authority ("MARTA") and Schindler Elevator Corporation ("Schindler"). The trial court granted summary judgment to MARTA and Schindler, and Thomas appeals. For the reasons stated below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that Thomas was injured during an escalator malfunction at the Five Points MARTA station on November 29, 2006. Thomas deposed that the escalator was off when she arrived at the station, but a MARTA employee turned it on so that she could ride it. As Thomas rode up the escalator and neared the top, the escalator suddenly jerked and stopped abruptly. Thomas hurried up the remaining few steps and laughed as she looked behind her to see if everyone was okay. Thomas then noticed a pain in her right knee, so she reported the incident to a MARTA police officer. However, Thomas refused the offer from a MARTA employee to call an ambulance for her injury.

In her complaint, Thomas alleged that MARTA and Schindler failed to keep the premises in a safe condition and knew or should have known that the escalator was not functioning properly. Thomas contended that the appellees were negligent in inspecting, repairing, and maintaining the escalator.

The appellees filed a motion for summary judgment, attaching the deposition of Joseph Hobby, the on-call mechanic on the evening of November 29, 2006. Hobby testified that he remembered the service call from the date in question, and he was aware the person was injured. Hobby testified that based on his visual inspection of the escalator just after the incident, the "[u]nit wrecked at the top end of stair, [with] three broken steps, [and] one bent axle. . . ." Hobby did not repair the unit that evening, and left it for regular

---

[1] (Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

work hours the next day. Hobby explained that he deduced there was a bent axle because "they'll have a large gap between one step to another. . . . Typically, usually it's a . . . bent axle." He also explained that he saw "signs of cracking in the step from being pushed against each other or pushed against the floor plate at the top end."

Hobby testified that normally a MARTA supervisor meets with an escalator inspector, and the inspector then puts the escalator back into service. Hobby explained that the inspector usually was not called to inspect the malfunctioning escalators prior to service unless there was an accident that resulted in the individual seeking medical treatment at the scene. Hobby explained that because he was told that Thomas had refused medical treatment, the repairing technician, rather than he, would have had any conversations with MARTA officials or Schindler supervisors regarding a meeting with an inspector.

Hobby explained that he could not say what exactly happened to cause the incident or what would be required to fix the unit because he was not the repairing technician. He deposed that normally problems like worn racks and broken steps were not caught during preventative maintenance. Hobby explained that for all work done on an escalator, there should be a ticket that says either "Preventative Maintenance" or "Service Call." He deposed that there should have been a ticket of some sort for November 30, 2006, if the regular technician worked on the escalator that day. He averred that the escalator was basically rebuilt in January 2007.

In response to the motion for summary judgment, Thomas provided the affidavit of Joseph L. Stabler, an expert on escalators. In preparing the affidavit, Stabler relied on the service contract between MARTA and Schindler, Hobby's deposition testimony, Thomas's description of the event, and various escalator repair manuals. Stabler claimed that there were eight causes for an escalator to wreck into the top end as Hobby had described, and those problems normally are caused by negligent maintenance. Stabler concluded that, based on the 65 reported incidents involving injuries for the escalators located at the Five Points station, as well as the service records for the escalator in question, the appellees were negligent in "maintaining, servicing[,] and troubleshooting the subject escalator." Stabler explained that the appellees had not produced a repair ticket for the incident involving Thomas, so the actual cause of the malfunction was not apparent. However, Stabler asserted that Schindler failed to service the escalator during two of the six months preceding the incident and did not perform biannual cleaning per the service contract; thus, Stabler concluded that the appellees failed to take steps to identify and correct potentially hazardous equipment conditions.

Stabler also averred that

> [i]n [his] opinion, . . . the November 29, 2006 incident involving . . . Thomas was proximately caused by Defendant[s'] failure to adjust, inspect, maintain, repair, service[,] and troubleshoot the subject escalator and further maintain it in safe and proper operation in accordance with the Maintenance Contract, industry custom, practice[,] and code.

Stabler opined that it is well known in the industry that sudden stops and uncontrolled or unintended movement is the leading cause of escalator-related injuries, and for that reason, "escalators require ongoing predictive and proactive preventative maintenance. . . ." Stabler averred that he believed the appellees were negligent for failing to notify the City of Atlanta of Thomas's injury, as required by law, and were negligent for failing to document and preserve the damaged escalator for proper investigation. He contended that because the escalator was shutdown and rebuilt in January 2007, the escalator was poorly maintained and serviced.

The trial court granted the motion for summary judgment to MARTA and Schindler, and Thomas now appeals.

1. First, Thomas argues that the trial court erred by determining that normal rules of spoliation do not apply to cases involving escalator injuries.

"Spoliation or destruction of evidence creates the presumption that the evidence would have been harmful to the spoliator."[2] Specifically with regard to the facts of this case,

> State law requires that "any [escalator] . . . involved in an accident [involving personal injury or death] shall be removed from service at the time of the accident. The equipment shall not be repaired, altered, or placed back in service until inspected by a certified inspector for the enforcement authority." OCGA § 8-2-106 (c). If it is proven that [the appellees] violated OCGA § 8-2-106 (c), then such conduct would constitute a form of spoliation of evidence, because by working on the elevator, the evidence would have been tampered with, altered[,] or destroyed.[3]

"Proof of such conduct would raise a rebuttable presumption against

---

[2] (Citations omitted.) *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997).

[3] Id.

[the appellees] that the evidence favored [Thomas], a fact rendering summary judgment inappropriate."[4]

In determining that the spoliation rule with regard to OCGA § 8-2-106 did not apply in this case, the trial court relied on *Peterson Properties Corp. v. Finch.*[5] The trial court found that *Peterson* limited spoliation to those cases in which "the negligence alleged is a preexisting defective condition," and thus, the plaintiff could not benefit from the spoliation rule because she had not presented "proof of causation of the malfunction of the escalator [or] evidence of th[e] hazard having occurred before."

*Peterson*, however, is distinguishable from this case. Here, Stabler testified that based on his experience and the characterization of the incident by Thomas and Hobby, the appellees' failure to properly maintain the escalator caused the incident, and had the appellees properly maintained the escalator, they would have known or should have known that the incident would occur. No such testimony was presented in *Peterson*, and the repair technician in that case testified that he did not find any problems with the unit immediately after the accident.[6] Here, even though Hobby could not state the exact reason that the incident occurred, he deposed that there clearly was a problem with the unit after the incident, and although he was aware that the individual who reported the issue was injured, he did not contact the inspector. Accordingly, the spoliation rule as expressed in *Lane v. Montgomery Elevator Co.*[7] should have applied to this case, and the trial court erred by finding otherwise. As we stated in *Lane*:

> If Georgia law permitted repairs and maintenance to be performed prior to the time of the state inspection, plaintiffs would never be able to show what malfunctioned and caused their injuries. Thus, the fact that [an inspector] could not identify precisely what caused the [incident] can hardly be surprising in light of the evidence that [the appellees] subjected the elevator to maintenance procedures [without] the state inspection. Whether [the appellees] tampered with the evidence must be resolved by a jury.[8]

With regard to an alleged missing repair ticket for the escalator, Hobby testified that in order to complete a repair on a unit, a service call ticket normally is generated by a technician. Thus, this evidence

---

[4] Id.

[5] 235 Ga. App. 86 (508 SE2d 463) (1998).

[6] See id.

[7] 225 Ga. App. at 525 (1).

[8] Id. at 526 (1).

may have been spoliated by the appellees, but this issue was not addressed specifically in the trial court's summary judgment order. Accordingly, we reverse the trial court's determination that our holding in *Lane* did not apply to this case.

2. (a) Next, Thomas argues that the trial court erred by granting the appellees' motion for summary judgment on the basis that Thomas failed to present any evidence that MARTA's or Schindler's negligence caused her injuries or that the appellees had superior knowledge of the hazard.[9] These determinations, however, are erroneous because Stabler averred that, based on the description of the escalator after the incident and Thomas's description of what occurred when she was on the escalator, only a limited number of malfunctions could have occurred, and each of those malfunctions likely occurred because the appellees negligently maintained the escalator.[10]

> [I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases. Here, given the expert's testimony, this is not one of those plain and undisputed cases in which the issue of proximate cause may be resolved as a matter of law.[11]

While Hobby's opinion of the cause of the incident may have conflicted with Stabler's, such a question of fact should have been sent to a jury.[12]

Although Stabler could not state with certainty the cause of the event, because there is a factual issue with regard to whether the appellees spoliated evidence, the trial court erred by granting summary judgment.[13] If the appellees indeed spoliated evidence by violating OCGA § 8-2-106 (c), then there would be a rebuttable presumption that the appellees' negligent maintenance caused the incident and that the cause was something that the appellees should have discovered prior to the incident.[14] As we explained in *Lane*, it is hardly surprising that Stabler "could not identify precisely what

---

[9] See *Clive v. Gregory*, 280 Ga. App. 836, 839 (635 SE2d 188) (2006) ("[t]o obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim") (punctuation omitted), aff'd, *Gregory v. Clive*, 282 Ga. 476 (651 SE2d 709) (2007).

[10] See *Clive*, 280 Ga. App. at 844-845 (4).

[11] (Citations and punctuation omitted.) Id. at 845 (4).

[12] See *Layfield v. Dept. of Transp.*, 280 Ga. 848, 849 (1) (632 SE2d 135) (2006).

[13] See *Lane*, 225 Ga. App. at 525 (1).

[14] See id. at 526 (1) ("[w]hether [the appellees] tampered with the evidence must be resolved by a jury").

caused" the incident if the appellees performed repairs and maintenance on the escalator prior to a state inspection and did not preserve the service call ticket explaining the exact nature of those repairs.[15]

(b) The appellees contend that the trial court should not have considered Stabler's affidavit because it contained hearsay and inadmissible attachments and was speculative in nature.

As an initial matter,

> [a]n expert may base his opinion on hearsay and may be allowed to testify as to the basis for his findings. When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. The evidence should go to the jury for whatever it's worth.[16]

Moreover, "[e]xpert testimony as to the practices of an industry [is] acceptable. This would include an expert's reliance on [such documents as] a Code used as the safety standard for an industry in forming his opinion."[17] Thus, the appellees' argument is meritless.

3. The appellees also argue that the trial court correctly granted summary judgment because Thomas's act of running up the remaining few steps on the escalator after the incident, rather than the incident itself, caused her injuries. That question, however, is an issue of fact that should be resolved by a jury.[18]

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 1, 2009 —
RECONSIDERATION DENIED SEPTEMBER 17, 2009 

*Fried, Rogers & Goldberg, Michael L. Goldberg*, for appellant.
*Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson II, Shukura L. Ingram, Tiffany C. Sellers*, for appellees.

---

[15] Id.

[16] (Citations omitted.) *Roebuck v. State*, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003).

[17] (Citations omitted.) *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 457 (1) (475 SE2d 188) (1996).

[18] See *Layfield*, 280 Ga. at 849 (1).